MHU

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DR. WILLIAM POLLACK, )
          Plaintiff )
                          ) No. 08 C 1405
       v. )
                          ) The Honorable William J. Hibbler
CUNNINGHAM FINANCIAL GROUP, LLC )
AND JOHN DOES 1-10, )
          Defendants. )

## MEMORANDUM OPINION AND ORDER

The Cunningham Financial Group sent several unsolicited fax advertisements to Dr. William Pollack. As numerous other recipients of unwanted faxes have recently done, Pollack turned to the courts, filing a class action lawsuit against CFG and ten unnamed Defendants. Pollack made three claims in his suit, asserting that: 1) sending the fax violates the Telephone Consumer Protection Act, 47 U.S.C. § 227; 2) sending the fax violates the Illinois Consumer Fraud Act, 8155 ILCS 505/2; and 3) because sending the fax causes Pollack's fax machine to print the advertisement, CFG converted his property. CFG moves to dismiss the second and third of Pollack's claims.

Pollack alleges that CFG sent via fax three unsolicited advertisements, all of which promised some plan to "get rich." (Compl. ¶¶ 7-9, Exs. A-C). Two of the advertisements listed a number that recipients could call to request removal, which, according to Pollack, is common among mass broadcasting of faxed advertising. (Compl. ¶ 14). Pollack alleged that CFG derived an economic benefit from this advertising. (Compl. ¶ 12). Pollack further alleged that he had no prior relationship with CFG and had not authorized it to send him faxed advertisements. (Compl. ¶ 13).

Based upon Pollack's allegation that CFG's acts were part of a mass-advertising campaign, Pollack alleges that CFG faxed the advertisements to at least 40 other persons in Illinois. (Compl. ¶ 16). Pollack alleges that the recipients of the faxes suffered damages in the form of used paper, ink or toner, and wear and tear on the fax machine. (Compl. ¶¶ 2, 21, 36, 48). Pollack also alleges that the cost to advertise by fax is approximately four percent of the cost to advertise by direct mail and that it shifts the real cost of the advertisement to the recipient. (Compl. ¶¶ 38-39). Finally, Pollack claims that unsolicited faxes waste time, in that he or his employees must: 1) determine the purpose of the fax; 2) identify the source of the fax; and 3) attempt to eliminate future receipt of unwanted faxes. (Compl. ¶ 2).

Motions to dismiss test the sufficiency, not the merits of the case. To survive a motion to dismiss under federal notice pleading, a plaintiff must "provide the grounds of his entitlement to relief" by saying enough to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, — U.S. —, —, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) (internal quotation marks, brackets, and citation omitted); *see also EEOC v. Concentra Health Serv., Inc.*, 496 F. 3d 773, 776 (7th Cir. 2007). Specific facts are not necessary. *Erickson v. Pardus*, — U.S. —, —, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007).[1] The Court treats well-pleaded allegations as true, and draws all reasonable inferences in the plaintiff's favor. *Disability Rights Wisc., Inc. v. Walworth County Bd. Of Supervisors*, 522 F.3d 796, 799 (7th Cir. 2008).

---

[1] Although Fed. R. Civ. P. 9(b) requires specific pleading for claims of fraud, Pollack does not allege that CFG violated the ICFA with a fraudulent practice, but rather with an unfair business practice. Thus, Pollack's ICFA claim does not fall within the ambit of Rule 9(b)'s heightened-pleading requirement. *See Centerline Equip. Co. v. Banner Personnel Serv., Inc.*, — F. Supp. 2d —, 2008 WL 597604 (N.D. Ill. Mar. 3, 2008).

CFG first argues that the unsolicited transmission of faxed advertisements does not rise to the level of an "unfair practice" under test set forth by the Illinois Supreme Court in *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 775 N.E.2d 951 (2002). *Robinson* directs courts to weigh three factors when determining whether a practice is unfair: 1) whether it offends public policy; 2) whether it is immoral, unethical, oppressive, or unscrupulous; and 3) whether it causes substantial injury to consumers. *Robinson*, 201 Ill. 2d at 417-18, 775 N.E.2d at 960-61. A practice need not meet all three factors to be unfair; it may meet one to a substantial extent or all three to a lesser degree. *Id.* at 418, 775 N.E.2d at 961.

CFG does not dispute that the sending of unsolicited faxes offends public policy, nor could they do so. The sending of unsolicited faxed advertisements arguably violates the TCPA and also constitutes a misdemeanor criminal offense under 720 ILCS 5/26-3. CFG argues instead that its conduct is not oppressive because the unsolicited faxed advertisements provide a number to call to avoid future distributions of such faxes.[2] In support, CFG points to *Western Ry. Devices Corp. v. Lusida Rubber Prod., Inc.*, No. 06 C 52, 2006 WL 1697119 (N.D. Ill. Jun. 13, 2006), and *Rossario's Fine Jewelry, Inc. v. Paddock Publications*, 443 F. Supp. 2d 976 (N.D. Ill. 2006). The court in *Western Ry. Devices Corp.* concludes (and the court in *Rossario's Fine Jewelry* adopts that conclusion) that the presence of a "remove" number makes the burden on the consumer reasonable by providing the consumer with a meaningful choice to avoid future faxes. *Western Ry. Devices Corp.*, 2006 WL 1697119, at *5; *see also Centerline Equip. Corp. v. Banner Personnel Serv., Inc.*,

---

[2] Contrary to CFG's repeated arguments, at least one of the faxed advertisements does not contain a remove number, but instead merely instructs the recipient to request removal without providing a mechanism to do so. *See* Compl. Ex. A. Though it may seem a trivial distinction, the Court cautions CFG to be more careful in its future representations.

3

2-8 WL 597604, — F. Supp. — (N.D. Ill. Mar. 3, 2008) (noting that faxes contained no "remove" number in finding conduct oppressive).

In response, Pollack argues that a "choice" provided after the injury has occurred cannot be meaningful. Illinois courts have found post-injury remedies to have provided a meaningful choice. For example, a policy to refund to consumers the price of items that scanned at an incorrect price provided a meaningful choice to accepting improperly priced products. *Tudor v. Jewel Food Stores, Inc.*, 288 Ill. App. 3d 207, 210, 681 N.E.2d 6, 8-9 (1997). Therefore, the court held that a grocery store's conduct was not oppressive even though it allegedly had an epidermic of improperly priced items. *Id.* This case, however, differs from *Tudor* in that nothing in the advertisement promises that CFG will reimburse recipients the cost of receiving unwanted faxes. While the amount might be small, the receipt of unsolicited faxes nonetheless leaves the recipient less than whole. *Cf. People ex rel. Hartigan v. Stianos*, 131 Ill. App. 3d 575, 581, 475 N.E.2d 1024, 1029 (1985) (consumers allegedly charged additional sales tax).

Moreover, Pollack also argues in his response that the "choice" offered by CFG is not meaningful. Pollack suggests that "[e]vidence will show that use of the 'removal number' often results in more faxes being sent by an advertiser who now knows that someone picked up and read his fax." (Resp. at 4). Though Pollack did not include these facts in his pleading, they certainly are consistent with the Complaint. If proven, Pollack would be able to demonstrate that he had no mechanism to halt the unwanted faxes other than to turn off his own fax machine. Given the absence of a "remove number" on one of the facts and Pollack's argument that calls to "remove numbers" often result in more unwanted faxes, the Court holds that the second factor tilts slightly in favor of the Plaintiff.

With regard to the third factor, CFG argues that the injury to Pollack is minimal. Nonetheless, Pollack has been injured and his injury can be measured, both in terms of materials cost and in terms of employee time. Many class actions involve claims that individually are small, but when aggregated are substantial. *People ex rel. Hartigan v. Stianos*, 131 Ill. App. 3d 575, 581, 475 N.E.2d 1024, 1029 (1985). CFG argues that it is improper to "pre-suppose" class-certification for the purpose of determining whether Pollack has stated a claim and distinguishes *Stianos* on the grounds that that suit was brought by the attorney general. *Centerline Equip. Corp.* debunks this logic, and the Court finds it persuasive. *See Centerline Equip. Corp.*, — F. Supp. 2d at —, 2008 WL 597604 at *9. Further, *Robinson* instructs courts to ask whether the practice causes substantial injury to *consumers*, not whether *the plaintiff* suffered a substantial injury. 201 Ill.2d at 417-18. CFG's argument would operate as a procedural bar to many class claims in ICFA cases. The Court therefore joins the court in *Centerline Equip. Corp.* and holds that a plaintiff who states a minimal (but real) injury may rely on the aggregate injury to the consumer class to demonstrate the alleged practice is unfair.

All three factors tilt in favor of the Plaintiff. The Court therefore DENIES its Motion to Dismiss Count II of Pollack's Complaint.[3]

CFG next argues that the Court should dismiss Pollack's conversion claim. CFG's first suggests that it did not exercise dominion or control over Pollack's property. This argument is without merit. Pollack alleges that CFG sent it an unsolicited fax. By doing so, CFG: 1) temporarily

---

[3] CFG presents a convoluted argument that Pollack has not sufficiently alleged that the fraudulent transaction occurred "primarily and substantially" in Illinois. CFG twists the holding of a precedent beyond recognition. Moreover, CFG ignores the well-settled precept that a Complaint need not allege facts.

exercised control over Pollack's fax machine such that Pollack could use it for no other purpose; 2) destroyed the usefulness of Pollack's paper; 3) destroyed the usefulness of Pollack's ink. These acts more than adequately show CFG converted Pollack's property for its own use. *See Centerline Equip. Corp.*, — F. Supp. 2d at —, 2008 WL 597604 at * 10 ("altering a chattel to materially change its characteristics can constitute a conversion, even if the defendant never comes into possession of the chattel.")

CFG next suggests that Pollack's injuries are *de minimus non curiat lex*. Again, the Court finds the reasoning in *Centerline Equip. Corp.* persuasive and need not reprint it here. *Id.* The Court DENIES CFG's Motion to Dismiss Count III of Pollack's Complaint.

IT IS SO ORDERED.

6/2/08
Dated

Hon. William J. Hibbler
United States District Court